Good morning. May it please the court, my name is Carrie Doyle. I'm appearing for the petitioner, Ndeye Ndiaye. There are a number of legal issues before this court with respect to this case that you could choose to address. But at its heart, this case is about whether an abused spouse has the right to present evidence of domestic violence to an immigration judge. She's not asking to be granted. She's only asking for her day in court. The petitioner explains and amicus discusses more fully. The Violence Against Women Act is an ameliorative statute and cases under the Violence Against Women Act should be considered with a more generous standard and with an eye to the issues that arise in domestic violence cases. The Board of Immigration Appeals seemed to ignore the fact that Ms. Ndiaye had suffered domestic violence and that the reasons the board stated in many aspects to deny her motion to remand if understood in the domestic violence context, in fact supports Ms. Ndiaye's claim that she'd been the victim of domestic violence. But when she filed her first asylum claim, wasn't she married at that time? Let me look at my my timesheet, but no her first asylum application was filed back in 2001 and she was not married until 2003 and she was in fact married when he went to the BIA. Was she married at that time? When it went when she appealed the asylum on January 2nd, 2003, which is at the administrative record 292, she was not married. She was married in June of 2003. It was remanded in 2004. So she was married at that time. But as she explains in her declaration that supports our motion to reopen and also supported by the psychiatric psychological report from her treating psychologist that was in the record at 18 and 19 is her declaration and the psychiatric report is from 31 to 32. As was explained there, because she's a victim of domestic violence she had in fact never told anybody that she had suffered domestic violence and it wasn't until we inquired as to that I-130 and why it was never filed that she in fact revealed that she had been the victim of domestic violence. That was in 2012? That was in 2012. Yes. The violence occurred during the course of her marriage. That's correct, your Honor. A fellow named Dent? Dent. Yeah, Mr. Dent. Her marriage terminated in 2005. The divorce was in 2005, I believe. That's correct. It was more than seven years. It was quite a while. Yes, it was quite a while and she had not told anybody and the psychological report supports that. How many different papers did she file? In that period of time with the immigration authorities. They did the motion to remand because she had won the diversity visa lottery. She'd renewed her asylum application in front of the judge in Baltimore, Maryland, and then we filed when the we filed the appeal in the Board of Immigration Appeals and while the case was pending in front of the Board of Immigration Appeals on the last appeal we filed the motion to remand and we believe that the Board of Immigration Appeals, again, did not take into account the fact that as a victim of domestic violence it's very common. In fact, the fact that she didn't talk about it supports the fact that she was subject to domestic violence because it's very common and amicus cites a number of reports that discuss this fact. But wasn't the motion to remand only with respect to the lottery? Okay, so there were two motions to remand in this case. It does have a long history. So the first motion to remand was with regard to when she won the diversity visa lottery. They've requested the case to be remanded. The Board of Immigration Appeals ignored the motion to remand, denied the asylum case, so then they filed a motion to reconsider at which point the case was reopened and remanded to the immigration judge. We filed a second motion to remand when it came out that she was in fact eligible for, potentially eligible for relief under the Violence Against Women Act. And again, all we need to do is show a court needs to consider all of the evidence that we submitted in front of them. In the board's decision, it was not a legally sufficient decision in denying our motion to remand in large measure because the board ignored the evidence that we had submitted. It didn't even cite the psychological report that we submitted or a number of the other evidence. She submitted an application for relief and she meets the basic elements which are marriage to a U.S. citizen and permanent resident, suffering abuse, and having been residing in the United States for at least three years, which clearly she has been. And for as this court has found that the prima facie case need not show that you can win your case, but only that you've established the necessary statutory elements in which she did. Again, as I pointed out that the... How much time do you normally have to raise? To raise, I'm sorry, what, Your Honor? To raise the issue, the 2012 claim of domestic violence that occurred in 2004-2005. What's the normal rule and how much time do you have to raise it? What's the statute of limitations? There is no statute of limitations. There is no normal rule. For cancellation of removal, it could be raised at any point. The question is whether at this point the Board of Immigration Appeals should have taken it into consideration and the proof and evidence that we've established. And a motion to remand was filed while her case was still open. We didn't actually try to reopen the case, and because the case was still open, it was still pending, and we showed her new eligibility for relief. We believe the Board of Immigration Appeals erred in not considering that evidence. You had counsel along the way, didn't you? She did have prior counsel. She did have prior counsel. Prior counsel wasn't aware of any of this. No, they were not. They were not aware of it. And as far as I'm aware from the client having in her declaration, she explains she's never never told prior counsel. As far as we can tell, prior counsel never inquired as to the reasons. But again, that's according to the respondent. We in effect saying there is no time limit to raise a battered spouse issue. No, I don't think so. I don't think it's that broad. I think the I think the limitation is just when, whether, or if the evidence becomes newly available. And in this case, That's correct, Your Honor. That's correct. There is no limit. It's just whenever she decides to bring it up. Well, I think it's perhaps not correct to say it's when she decides. In consideration of domestic violence, and other courts and other fora have been struggling this for many years, the fact that victims of domestic violence have their very own problems and issues that they have to deal with. And the fact that it might take them quite a while to come to terms with the fact that they are victims of domestic violence, and that the shame and the guilt and the control that's exerted by their batterer often can take quite a while. And that's well documented in, again, in all of their fora. Still, then, the answer to Judge Traxler's question is that there is no outside limit. You're talking in terms of quite a while, and that's very... There may not be. There may not be. The rules that apply to motions to reopen and motion reconsideration, of course, we have to meet some of those standards. And the courts do have to consider whether this evidence is previously available, or if it's new evidence. And we would argue that this is new evidence, and that the board didn't even consider the fact that she was a victim of domestic violence, and there was a report from the psychologist supporting her argument that she had not ever been able to talk about the situation that she had faced. And the board didn't even mention that most important piece of evidence in making their determination to deny her motion. So, no, I wouldn't say that you can make a bright-line rule that this is too early, or this is too late. I think each case has to be taken on a case-by-case basis and as individual facts. And for one person who's a victim of domestic violence, they may be able to talk about it right away. But especially for immigrant women, they face particular issues because in immigration cases, the petitioner, who is the batterer in many cases, which is why Violence Against Women Act was even included the immigration situation, because Congress understood that the petitioners, the batterers in these cases, control the entire immigration process. And that's why there's a self-petition process, and that's why there's special rule cancellation of removal. It was added in addition to the other methods of cancellation of removal to allow for people who are subject to domestic violence some special considerations. So, I think each case has to be taken on its own merits. I don't think it's possible to talk about a contemporary limit that may or may not apply in a particular case. And in this case, the information did come out when we did inquire, and we found out, and the psychologist has been meeting with her and can support her statement, and that the board never even addressed those particular issues. They ignored the evidence. They misconstrued some evidence. They used improper legal standards. They did not fully explain and fully analyze the denial, and they also relied on a very faulty credibility standard. As you know, for motions for prima facie, for showing prima facie eligibility for a case, there's actually a three-step process, and this board conflated a number of those factors. First, we have to show in the record. Did she say in the record or give a reason why she didn't disclose this until the last minute? Right. In her declaration at 18 and 19, which is in the remiss of record 18-19, she does explain the fact that she had never told anyone because of the guilt and the shame, and that she really, and the psychologist also talks about this, and that's at the remiss of record 31 and 32, the fact that she had sort of overwhelming guilt and shame and felt that she may have suffered this abuse or this terrible circumstance. Did she ever explain after she's divorced why she never tells anybody? Right, because of the guilt and the shame. No, I mean, did she say that? In her affidavit. She says that's why she didn't report it. Yes. But she says, I never told anyone about the abuse until I told my client, period, but I didn't see any correct explanation for why she waited until that point. Right. Well, I think the psychological report is rather elucidates that further because it talks about the fact that she blamed herself for the abuse and blamed herself, felt that it was it was retaliation in the bigger picture for her having stood up against her father who had since passed. So the psychological report elucidates that further, the fact that she carried this guilt and shame for quite quite some time. And no one, there's nothing on the record of the judge, and the judges, immigration judges, have certain burden to establish a record, to establish eligibility for certain forms of relief. There's nothing on the record of anyone ever asking her why her husband didn't file the I-130 and even assuming she'd be able to discuss it with the judge, no one ever explored that issue on the record. And the fact that he did not file for her, more than 73% of immigrant battering spouses don't file immigration paperwork to sponsor their spouses. So, in closing, I would just like to urge this court to remand this case, to allow Ms. India the opportunity to apply for VAWA cancellation of removal, and to recognize the fact that Violence Against Women Act cases should be considered in a broader framework, and also that the Board of Immigration Appeals in this case issued a flawed decision, didn't even mention, let alone consider or analyze all of the evidence that we did submit in establishing her prima facie eligibility. Thank you. May it please the court, David Wetmore for the Attorney General. I believe your honors hit on the key factors in this case with regard to the VAWA issue. First, the petitioner was represented consistently throughout all of her proceedings. Her proceedings began in 2001. She was represented by an attorney of her choosing, who she continued to re-employ through various motions before the immigration judge, before the board, when she was seeking her diversity lottery consideration. Then she filed numerous continuances. She sought numerous continuances because apparently she was trying to get an I-130 at some point. This occurred, this representation was both before her marriage, as well as after her marriage concluded, all the way through 2011. She was continuing to maintain her claim, which the immigration judge and the board both found was not objectively verified. The addition... The credibility ruling, the adverse credibility ruling earlier, impact on what she says now about this? Well, your honor, it plays into one of the factors of denying the motion to remand. The board really did this, the denial based on all three factors. First, the petitioner failed to establish a prima facie case. They found, you know, she simply hadn't done it. She hadn't offered proper evidence of that this abuse ever happened. They specifically referenced... Why isn't her affidavit together with the psychologist's opinion sufficient to make a prima facie case? Well, I think in that case you should be able to expect a little bit more. In fact, when the petitioner... I mean, the original petition was filed seven years and two months after her divorce, and then another two years and four months after that, the petitioner has filed with the board a much more fleshed-out version in which she attached some medical records that she claims, some pictures. All that evidence was available. All of it could have been brought, and that's exactly what the the court alluded to. They said... But what's the period of limitation? The statute of limitations, there really isn't one, and counsel Petitioner was correct in that it is a case-by-case basis. In this case, simply does not have the factual basis to support it. All the evidence that she presented was previously available. None of it demonstrated, other than her own affidavit, that she actually suffered any of this abuse. So when we go to the second prong... What about the psychologist's opinion? Well, the psychologist's opinion really was just a rehashing of her own testimony. No, it really wasn't just a rehashing of her own testimony. It was the psychologist having talked to her based on the psychologist's experience, the psychologist's opinion, not just a rehashing of her testimony. Well, I think the court picked up on this a little bit earlier when they said, you know, why, you know, what were the reasons that she individually gave? Did she say, I felt societal pressure, I couldn't reveal this until now? She simply didn't. You know, her declaration in March of 2012 simply says, I never told anyone about the abuse until the day I told my new attorney. That doesn't establish that she was unable to tell anybody. Her own words show that she simply didn't do that. The statements in the psychological... Yes, I am. That's the only thing we have in this record about it? That's her only statement regarding it. She says, I never told anybody. Yes, absolutely. The psychological report gives additional. It just says, you know, she had not discussed the violence in her marriage with anybody, and then goes on to, you know, opine on some reasons why she may not have done that, but her own testimony... But doesn't that burden of proving why she didn't raise this issue? Absolutely, Your Honor. She absolutely does. She also has the burden to show that the evidence that she's presenting was material and not previously available, and all of it absolutely was. She presented a statement that said, yeah, this abuse happened seven years and two months earlier. She presented a marriage certificate, which didn't demonstrate anything on its face and was previously available. A default divorce decree, which didn't have any indicia that abuse occurred. Not that it necessarily would, but it didn't go to demonstrate the abuse. Her own declaration, the psychological report... The divorce is no-fault. She had a no-fault divorce. Yes, yes. It was a default divorce. You wouldn't need to allege physical abuse, for example, as a ground for the divorce. That's true. That is true, Your Honor. And we're not saying that it should have been in that. We're simply saying that there was nothing in that document that would corroborate the claims. One way or the other. Sure, absolutely. And then she submitted some tax returns and a background certification, none of which go to the demonstrating independent criteria that the abuse actually occurred. So when the, you know, when the board pointed out examples of what she could provide, police reports, medical documentation... Yes, and her affidavit states that her husband, quote, hit me, raped me, and called me names. I wanted to call police, but he put a knife to my throat and told me if I called police, he would kill me. And with regard to hospital records, when I had bruises from when he abused me, I didn't go to the hospital because I was scared, which is not at all out of the ordinary for domestic violence cases, which is why Congress has included this in the immigration statute. I would agree with that statement, but for the fact that Petitioner has demonstrated that that information was, in fact, available. When Petitioner moved to hold this case in abeyance, she submitted the very motion to remand that she has previously filed with the board on July 15, 2014. And within that, we have a much more detailed affidavit. We have photographs purporting to show burns that she suffered. We have a document purporting to be injuries to her mouth, some dental records. All of that evidence was available. She didn't present any of it. It's her burden to present that evidence to demonstrate that she has a prima facie case, and there's no showing why she couldn't have presented that seven years and two months after her marriage while she's been represented the entire time, and why she waited another two years and four months to simply take a picture of her purported burns and request a simple dental record, which would have overcome the board's objection to her not presenting any evidence to establish a prima facie case. In that way, she's demonstrated the insufficiency of her initial application, which is the only one, her application for remand, which is the only issue before the board or before this court. You know, she simply failed to do that. It fully supports the board's decision on all three bases. With regard to... So if a domestic violence victim doesn't present cooperating police reports and medical records, it's just never going to meet the prima facie test? Is that what the government is saying? Well, I mean, it certainly could. It depends on the context in which it's raised. Here we have it being raised years later. We have absolutely no evidence. It's presented as a motion to remand, and therefore, I'm sorry, a motion, yeah, a motion to remand, and therefore subject to the requirements of a motion to remand, which puts it in a different procedural posture than simply filing this as, you know, an affirmative application, which if she filed it as an affirmative application and she timely filed this, you know, during the pendency of the case, she had opportunities all the way during that seven years and two months, multiple appearances before the immigration judge, the entire time represented by counsel of her choosing. And she's essentially provided no reason why she didn't discuss this with her own attorney that she chose. And she's... As I understand, the issue is not does she have a prima facie case. The issue is why did she wait so long to raise... Yes, absolutely. That's absolutely one of the issues. Why did she wait so long? Why didn't she present this evidence at any of these hearings that was material and previously available? Why did she wait until, you know, almost 10 hearings later to present this when she had every opportunity to do so and timely do so? So it's not that she's being deprived of her right to bring these claims. She's had multiple opportunities to do so and she hasn't, in her own words, offered any reason why she was unable to do so. She's offered an explanation of why she did not do so, but she did not say, I was under duress, I felt threatened. There's no statement from her individually that establishes why this was actually unavailable. Let me ask you this. When we have an issue like this, can we take into consideration that a competent attorney representing her would have reviewed with their client all of the grounds that are available to prevent deportation? You know, I think, Your Honor, if it was raised in the context of ineffective assistance of counsel, then that would certainly be an apt analysis. Here, there's been no such claim. I know, but apart from that, can we assume that a competent, first of all, I'm pretty sure we can assume that a lawyer is competent. I would hope so, Your Honor. Could we then presume from that that when a client comes in and says, I'm facing deportation and I want to resist that and I want to stay here, that a competent attorney will go over with their client all of the grounds that exist to prevent deportation? I think that's an absolutely correct assumption. Which client would take advantage? Which one? Most certainly. Most certainly. Especially an attorney that was representing, in this case, the client prior to the marriage, during the marriage, and for almost seven years after the marriage, filing multiple different applications for potential relief. What was the period of representation? I believe it began in 2001, and the last filing was 2011. Ten years. Ten years of representation. So your proposition would be that the absence of an ineffective assistance claim is something that's worthy of consideration. I believe so, Your Honor, as well as the fact that back in 2002, the petitioner was in psychological counseling prior to her marriage. So she's no stranger to being able to go and speak with someone about problems that she's faced. She even submitted a psychological report back on October 22, 2002. It's at pages 403 through 06 of the administrative record, which demonstrates that she is able and willing to speak to people about issues that are hard to discuss. In fact, that psychological report talks about the problems that she had in her alleged family dispute regarding her arranged marriage to this individual back in Senegal. So it's not a case where this is an immigrant who comes who was pro se for a long period of time, didn't know how the system works, felt scared, felt like she could not reveal anything to anybody. This is an individual who was taking advantage of the mental health system in this country and apparently benefiting from it, represented at her own cost by counsel of her choosing for over 10 years, and seven years and two months of which were after her divorce. She sought numerous forms of relief, asylum, withholding, protection under the Convention Against Torture. She sought and applied for diversity. She even, through her attorney, sought multiple continuances to file an I-130 petition, presumably on behalf of her former husband or another individual after that. It's kind of unclear from the record, but that's the reason the continuances were granted. So it's not as if her prior counsel wasn't looking at every option available to her. What's the I-130? That's a petition for an alien spouse. So if she's married, then they can petition. A visa petition or something? Yeah, a marriage visa. It's all these codes, these government numbers. I know. It took me a while to learn, too. But, yeah, it's a petition for an alien spouse, and that was being considered, and apparently her former husband did not file one on her behalf. But continuances were sought for that reason. So if the Court has no further questions, we submit a no briefs. Thank you. Ms. Dole? Thank you, Your Honors. Two points I'd like to make. First of all, if you review her affidavit, there is some additional language that I think the Court should look at and can review. Her affidavit? In her affidavit, the declaration that supported our initial motion to remand. At the paragraph five, I believe, she said, it would be hard for me emotionally and mentally because I never thought in my life that I would let my husband abuse me, to be able to talk about it. For years I've held on to the pain and shame I feel from what happened and the fear of people knowing, which goes to the very heart of this, which is that we can't just look at this and say, oh, she should have applied for this or she should have applied for that, without considering the fact that we're talking about a situation with domestic violence and that the Violence Against Women Act was specifically passed and specifically considered because the abusers will use the immigration process as an additional form of abuse. And that in the amicus talks about this and cites a number of articles and also, as I said, cites the fact that 73% of abusive family members never file for their spouses. And so for the government to say, oh, he should have filed the I-130 and there were continuances, that goes to the heart of the case, which is that he was abusing her and refused to file the I-130 for her. Additionally, under the VAWA Cancellation of Removal Statute under 8 U.S.C. Section 1222B, parenthetical B, 2D, it talks about the fact that all credible evidence must be considered in establishing eligibility for the Violence Against Women Act. So the psychological report, her affidavit, must be considered by the court, and it did not do so. And it rejected the fact that this is a domestic violence case, this was a case that was filed while the case was still pending, and the fact that our affidavit was relatively short, the psychological report was relatively short, and that our following motion to reopen is much more elaborate, goes to the heart of the fact that she never talked about it. She could never tell anyone what happened, and that when we find out we had to file as soon as possible, which we did. But we met all the requirements for a prima facie case. We included the application. We included the proof. And that if you ignore the fact that this is a special rule, the Violence Against Women Act, that relates to domestic violence, I think that you would do Ms. Ndiaye a disservice. And I would urge this case, this court, excuse me, to reconsider her case and allow her day in court to present her evidence to try to pursue her Violence Against Women Act cancellation of removal. Thank you, Your Honors. Thank you. We'll come down and recouncil and then go into our next witness.
judges: William B. Traxler, Jr., Robert B. King, Stephanie D. Thacker